USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/22/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

ZAREH TJEKNAVORIAN and ALINA TJEKNAVORIAN,

Plaintiffs,

- against -

SHANT MARDIROSSIAN and ACORNE PRODUCTIONS LLC,

Defendants.

---------------------------------------------------- X

**OPINION AND ORDER**

**14-cv-5723 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

Zareh and Alina Tjeknavorian ("the Tjeknavorians") are filmmakers. In 2009, they began collaborating with Shant Mardirossian, Chairman of the Near East Foundation, on a documentary to commemorate the centennial anniversary of the Armenian Genocide ("the Film"). Mardirossian agreed to fund the project, giving the Tjeknavorians creative discretion. In return, the Tjeknavorians agreed to finish the film by 2015 — the centennial year.

By November 2013, with the film still incomplete, the relationship between Mardirossian and the Tjeknavorians had soured. Frustrated with the slow

progress, Mardirossian sent the filmmakers a formal letter, demanding that they turn over "all of the materials [] created in connection with [the film], all legal rights in those materials and the Film, as well as any equipment used in the creation of those materials."[1] The Tjeknavorians refused, and in March 2014, Mardirossian filed a suit for breach of contract in the Supreme Court of New York, Kings County. In response, the Tjeknavorians counterclaimed, alleging that, in fact, it was Mardirossian who had breached the agreement. The case is pending.

On July 25, 2014, the Tjeknavorians filed the present suit,[2] which moved directly to summary judgment on a narrow question of federal law: whether the parties' agreement, regardless of its *content*, was memorialized in a way that satisfies the writing requirement of Section 204(a) of the Copyright Act.[3] The Tjeknavorians maintain that it was not, rendering copyright transfer impossible under federal law. Accordingly, the Tjeknavorians seek a declaration

---

[1] Plaintiffs' Complaint and Prayer for Relief ("Complaint"), ¶ 66.

[2] The case has a convoluted posture. The Tjeknavorians raised the "writing" argument as a counterclaim in the Kings County proceeding, and attempted to have the action removed to the Eastern District of New York. When removal was unsuccessful, they filed an original suit in this Court. *See* 8/21/14 Transcript of Conference.

[3] *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

that they "are the sole owners of the copyrights in all materials they created in connection with their work on the film."[4]

In its discussion of the facts, as well as its legal conclusions, this Opinion is limited to the discrete issue of whether the agreement between Mardirossian and the Tjeknavorians satisfied the writing requirement of Section 204.[5] For the reasons set forth below, I conclude that it did not.

---

[4] Complaint ¶ 82.

[5] In particular, facts that are germane to the underlying contract dispute, but irrelevant to the "writing" issue, are omitted. This case, unlike the parallel proceeding in Kings County, is not about the substance of what the parties agreed to. Rather, it is about how the parties *executed* their agreement — and whether that execution complied with the formalities of copyright transfer under federal law. *See* 9/16/14 Transcript of Conference, at 4-5. Mardirossian's opposition papers are largely addressed to the contract issue — what promises the parties made to one another, and when and how those promises were broken. Indeed, Mardirossian goes so far as to suggest that the Court should skip past the "writing" issue entirely, and move directly to the "real issue" in the case, which is "what [contract] remedy [] the Court [should] grant." Defendants' Memorandum in Opposition to Summary Judgment ("Opp. Mem."), at 8.

Mardirossian may be right: it is possible that the"writing" question will have little to no bearing on how the parties' dispute is ultimately resolved. But that is irrelevant. What matters is that the Tjeknavorians believe that the Kings County litigation imperils their rights under federal law — specifically, their entitlement to an exclusive copyright interest in whatever materials they authored. Federal law affords the Tjeknavorians an opportunity to secure those rights, *regardless* of how much — or how little — it ends up impacting the state contract dispute. At the same time, that I decline to skip past the writing issue does not mean that I disagree with Mardirossian about the importance of the underlying contract dispute. Indeed, because time is of the essence — the documentary's value will diminish significantly if it is released after 2015, the centennial year — the contract claim should be adjudicated as swiftly as possible.

## II. BACKGROUND

The pertinent facts are not in dispute. In 2009, the Tjeknavorians and Mardirossian entered into an oral agreement to collaborate on the Film.[6] The project was envisioned as a "feature-length documentary film devoid of propaganda,"[7] with the purpose of spotlighting "humanitarian efforts in connection with the Armenian Genocide."[8]

For the next three years, the Tjeknavorians worked on the Film. In 2012, for reasons unknown (and irrelevant to the issue at hand), Mardirossian ceased funding the project.[9] In early 2013, Mardirossian "delivered the Tjeknavorians a draft of a written Producer Agreement,"[10] seeking to formalize their relationship. The Producer Agreement was never signed.[11]

## III. STANDARD OF REVIEW

---

6 *See* Statement of Undisputed Material Facts ("Fact Statement"), ¶ 3. It is undisputed that this collaboration did not constitute a "work for hire," as that term is defined in the Copyright Act. *Id.* ¶ 5.

7 *Id.* ¶ 2.

8 *Id.* ¶ 1.

9 *See* Complaint ¶ 49. *Accord* Defendants' Answer, Affirmative Defenses, and Counterclaims, ¶ 49.

10 Fact Statement ¶ 8 (quotation marks omitted).

11 *See id.* ¶ 9.

"Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"[12] Accordingly, summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the [non-moving party] and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[13]

## IV. APPLICABLE LAW

### A. The Writing Requirement

Section 204 of the Copyright Act provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."[14] This so-called "writing requirement" serves numerous functions. *First*, and most importantly, "it ensures that a copyright will not be inadvertently

---

12 *Whethers v. Nassau Healthcare Corp.*, No. 13 Civ. 2991, 2014 WL 4637215, at *1 (2d Cir. Sept. 18, 2014) (*citing Matsushida v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

13 *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014).

14 17 U.S.C. § 204(a).

transferred."[15] *Second*, "[the requirement] forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred."[16] *Third*, it "provides a guide for resolving disputes."[17]

Although a writing sufficient to satisfy Section 204 does not have to be long or elaborate, it must explicitly convey a party's intention to sign away his or her copyright interests. Put otherwise, although "'a one-line pro forma statement will do,' . . . the terms of any writing purporting to transfer copyright interests . . . must be clear."[18] In this respect, the writing requirement of Section 204 is more stringent than traditional statutes of frauds. Unlike the latter, whose sole purpose is to "effectuate the parties' intent," the writing requirement aims "principally to protect authors from those claiming, contrary to the author's view of the facts, that he or she transferred rights in the work."[19] In fact, Section 204's protection of authors extends even to "protecting authors [] *from themselves* if need

---

[15] *Lyrick Studios v. Big Idea Prod.*, 420 F.3d 388, 392 (4th Cir. 2005). *Accord Effects Assoc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

[16] *Lyrick Studios*, 420 F.3d at 392.

[17] *Id.* *Accord Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 749 (1989) (describing predictability of copyright ownership as "Congress' paramount goal" when it revised the Copyright Act of 1976).

[18] *Papa's-June Music v. McLean*, 921 F. Supp. 1154, 1158-59 (S.D.N.Y. 1996) (*citing Effects Associates*, 908 F.2d at 557).

[19] 2 Patry on Copyright § 5:106.

be."[20] It imposes a rigid default in favor of letting creators retain their interests in copyrighted work.

### B. Supplemental Jurisdiction

Federal courts may exercise "supplemental jurisdiction" over claims that "form part of the same case or controversy under Article III of the United States Constitution."[21] This jurisdictional grant permits, among other things, the adjudication of "state law claims [arising] from the same facts as the federal law claim" that triggered the federal court's original jurisdiction.[22]

## V. DISCUSSION

### A. The Section 204 Claim

According to Mardirossian, "there are numerous writings" — by which he presumably means email, as no written correspondence has been produced by either side[23] —

---

[20] *Id.*

[21] 28 U.S.C. § 1367.

[22] Erwin Chemerinsky, Federal Jurisdiction § 5.4 at 359 (6th ed. 2012).

[23] This excludes the Producer's Agreement that Mardirossian sent to the Tjeknavorians, which, despite being in writing, was unsigned — and therefore does not reflect the will of both parties. *See Papa's-June Music*, 921 F. Supp. at 1159 (noting, as a final element of the Section 204 writing requirement, that "of course [] the owner of the copyright interests being conveyed *must sign the document*") (emphasis added).

> that set forth the parties' agreement with respect to the making of the Film. For example . . . [Mardirossian] has produced documents to the Tjeknavorians evidencing: the parties' expectations that the Film would be completed by the Centennial, . . . Mr. Tjeknavorian's promise to have the script and principal photography completed by Spring of 2011, Mr. Tjeknavorian providing an original budget for the film, Mr. Tjeknavorian providing an outline for the Film, Mr. Tjeknavorian's promises to have a final outline and budget ready by the end of May 2013, Mr. Tjeknavorian's previous practice of assigning copyright in completed projects to his previous sponsors . . . , statements made to third parties by Mr. Tjeknavorian that he and Mr. Mardirossian are co-producing the film, and documentary evidence of [Mardirossian's] numerous monetary payments and reimbursements to the Tjeknavorians.[24]

This Court is in no position to determine if Mardirossian's claims are true. Assuming, *arguendo*, that all of these claims are true, none of the items listed by Mardirossian suggests the existence of a writing sufficient to transfer copyright. In fact, in the very next paragraph of his opposition papers, Mardirossian concedes that he "does not yet have in [his] possession a document explicitly assigning copyright in the Film."[25]

---

24 Opp. Mem. at 7-8.

25 *Id.* at 8. By way of explaining *why* he does not have such an agreement, Mardirossian points to the fact that "the Tjeknavorians have failed to complete the Film." *Id.* This logic is puzzling. Whether the parties' agreement included the transfer of copyright from the Tjeknavorians to Mardirossian in no way depends on the existence (or non-existence) of the copyrighted work. Furthermore, under circumstances like this — a patron commissioning work from artists — one would expect an agreement to transfer copyright to be executed

This concession essentially decides the case. Having acknowledged that the parties never executed a "document explicitly assigning [him] copyright in the Film," the only remaining argument advanced by Mardirossian is that the parties' emails — taken together — can satisfy the writing requirement of Section 204. This argument fails. Email can only satisfy the writing requirement if the intention to transfer a copyright interest is explicit.[26] For example, the Fourth Circuit has held that if users electronically agree to terms of service that include the transfer of copyright in photographs, that agreement meets the writing requirement — in spite of its digital form. Similarly, the Southern District of Florida has held that an email exchange can suffice to transfer a copyright when the offer to do so, and the corresponding acceptance, are unambiguous.[27]

---

*before* the work is complete. That the Tjeknavorians are not done with the Film provides no explanation, much less an excuse, for why the parties have no agreement to transfer copyright.

[26] At least one court has held that email can *never* satisfy the writing requirement — because "writing" necessarily refers to a written instrument. *See Ballas v. Tedesco*, 41 F. Supp. 2d 531 (D.N.J. 1999). I decline to adopt this interpretation of Section 204. In the digital age, there is no reason to limit copyright transfer to pen-and-paper transactions. In order to "ensure that creator[s] [] not inadvertently give away [their] copyright [interests]," the important variable is not the *form* that an agreement to transfer copyright takes, but rather, the clarity with which such transfer is expressed. *Papa's-June Music*, 921 F. Supp. at 1158. Email is no different, in this respect, from non-digital forms of writing.

[27] *See Vergara Hermosilla v. Coca-Cola*, No. 10 Civ. 21418, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011).

These cases are factually distinct from the instant case. To hold that the parties' emails here amount to a writing within the meaning of Section 204, I would have to find that the intent to transfer copyright can be inferred from the parties' course of dealing. That is exactly what Section 204 forbids. And it is exactly what Judge Naomi Buchwald of this District declined to do in a case on all fours with the present dispute, where one of the parties tried — unsuccessfully — to argue that the intent to transfer copyright could be inferred from emails related to other business matters. "The rule," Judge Buchwald concluded, "is really quite simple: If the copyright holder agrees to tranfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying say so."[28]

Ultimately, a writing does not have to be long — it need not exceed "a one-line pro forma statement." [29] But there is one thing it absolutely *must* be, and that is "clear."[30] Mardirossian has pointed to no email, or other correspondence,

---

[28] *Weinstein Co. v. Smokewood Entm't Group, LLC*, 664 F. Supp. 2d 332, 340 (S.D.N.Y. 2009) (internal citations omitted).

[29] *Papa's-June Music*, 921 F. Supp. at 1159.

[30] *Id. Accord Rico Records Distribs. v. Ithier*, No. 04 Civ. 9782, 2006 WL 846488, at *1 (S.D.N.Y. Mar. 30, 2006) ("[A 'writing'] evidencing the transfer [of copyright ownership] need not be lengthy or detailed, but it must evidence the transfer with reasonable clarity."); *Playboy Enter. v. Dumas*, 831 F. Supp. 295, 308 (S.D.N.Y. 1993), *aff'd in part and rev'd in part on other grounds*, 53 F.3d 549 (2d Cir. 1995).

that clearly evinces the intent to transfer copyright. Therefore, the Tjeknavorians are entitled to the declaration they seek.

In a final effort to obtain the copyright, Mardirossian pleads the equities. He argues that although the writing requirement of Section 204 certainly aims "to protect authors' legitimate interests in their own works," it was "never intended to be used as a shield to conceal a party's breach of contract, incompetence, or deceit, or to enable filmmakers to take someone's money, but provide nothing in return."[31]

The implication here is that if the Tjeknavorians were to obtain the relief they seek, it would somehow impair Mardirossian's ability to recover against them in the pendant Kings County litigation. That is incorrect. By holding that the Tjeknavorians did not transfer Mardirossian a copyright interest in the materials they authored, this Opinion neither preempts nor delays the underlying contract dispute.[32] Its exclusive effect is to limit the *remedies* available to Mardirossian in the event that his contract claim prevails. It is quite possible that the Tjeknavorians

---

[31] Opp. Mem. at 3.

[32] If anything, just the opposite: clarifying the application of Section 204 to the parties' dispute will in all likelihood serve to *accelerate* the Kings County action. As the Tjeknavorians point out in their reply, "[r]esolution of the transfer issue is vital to determining the parties' rights to the film materials and is the central issue in [both] this case and the collateral state court action." Plaintiffs' Reply Memorandum in Support of Summary Judgment, at 4-5.

did in fact "take [Mardirossian's] money, [while] provid[ing] nothing in return"[33] — if so, Mardirossian should be able to recover what is rightfully his. But there is one thing that federal law makes clear is *not* rightfully his: copyright ownership over film materials authored by the Tjeknavorians.[34]

### B. Supplemental Jurisdiction Over Contract Claims

The parties' contract dispute involves no question of federal law. It is exclusively a state law claim. However, because the contract dispute "form[s] part of the same case or controversy" as the writing issue,[35] this Court may exercise supplemental jurisdiction over the parties' contract claims.[36]

## VI. CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED. It is hereby declared that the Tjeknavorians have not transferred,

---

[33] Opp. Mem. at 3.

[34] This holding leaves open the possibility — raised in passing in the conclusion of Mardirossian's opposition papers — that even if no copyright transfer occurred, he is still entitled to "a non-exclusive license to all the Film and archival materials." *Id.* at 10. This may be so, but it presents a question of substantive copyright law that deserves furthering briefing. The issue is reserved.

[35] 28 U.S.C. § 1367.

[36] Both parties have explicitly noted that they are amenable to the exercise of supplemental jurisdiction over their contract claims. *See* 10/21/14 Transcript of Telephone Conference.

conveyed, or assigned to Mardirossian their ownership of any copyright interests in any materials that they authored in connection with their work on the Film.

The Clerk of the Court is directed to close this motion (Dkt. Nos. 19 and 32). A conference is set for Wednesday, October 29, at 4:30 PM — and the parties are directed to meet and confer before then to discuss (1) fact discovery and (2) anticipated motion practice.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 22, 2014

**- Appearances -**

**For Plaintiffs:**

Alex V. Chachkes, Esq.
Phillip Smaylovsky, Esq.
Orrick, Herrington & Sutcliffe LLP (NYC)
51 West 52nd Street
New York, NY 10019
(212) 506-5000

**For Defendants:**

Jeffrey C. Morgan, Esq.
Barnes & Thornburg LLP
3475 Piedmont Road, N.E.
Atlanta, GA 30305
(404) 264-4015

Taline Sahakian, Esq.
Constantine Cannon, LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
(212) 350-2768